Could you start by stating your appearance for the record, please? Yes. My name is Carly Christopher. I'm appearing on behalf of the Appellant A.G. I'd like to reserve up to five minutes for the amicus to present and up to two minutes for rebuttal. Just manage your own time. Thank you. Thank you. May it please the Court. This Court in 2008, in the case of Lemahew, found that if a person needs a reasonable accommodation to access benefits, the failure to provide that accommodation is disability discrimination. A.G. was denied meaningful access to her education when the district denied a production of a functional behavior assessment, a behavior plan, and subsequent behavior services. They also failed to meet her educational needs as adequately as they met the needs of her non-disabled peers. This resulted in harm for A.G. And your position is that this was obvious, not that the parents had requested these in particular. When you say denied, I just want to be clear. Correct. Both that it was obvious under the Duval standard, that it was obvious and that it was required by law. Under the obvious standards, the district had information that they produced themselves, separate from the testimony of Dr. Farrow in the excerpt of records, that A.G. was struggling at school. Dr. Hudson, the teacher who had the most direct contact with A.G. while she was at Vista Verde, before she got moved to Roadrunner, wrote to Dr. Kirkland and said, I need help, what we're doing is not sufficient, and I'm at a disadvantage. At that point, she had a PBIP that was developed absent any type of, and a PBIP is a positive behavior plan, absent any type of functional behavior analysis. The reason why a functional behavior analysis is required by the law, and we look to CFR 34104.35b2, that a district has to assess in all area of educational need. That's why it's a little bit tricky to say whether it is or is not required under the law. It depends on the individual child, right? Absolutely, but in special education, we look to the child and to the deficits that they have and to the behaviors that they themselves are exhibiting. Right, so your argument is in this case it was required by the law because of the difficulties that were presented. Yes, absolutely. That behavior in this case was an educational need. You had an ongoing individualized education plan, correct? Correct. And the parents participated, A.G. participated to some extent, as well as the systems representatives. To what extent would that ongoing IEP planning meeting process be considered part of a sort of an assessment of their behavior and a plan to address it? Because when they change schools, the record shows the parents participated in that process, agreed to that process. Thank you for that question, Your Honor. And I guess the ultimate question, is that all waivable, the need for a formalized behavioral assessment and intervention plan? Thank you for that question. The way that the IEP is in fact developed is by way of assessment. Assessments create the development of goals and plans, and goals and plans create the offer of services and placement. So when the IEP team met both in November of 2009 and again in February of 2010, there was absent any analysis of her behaviors. So they were creating a plan not based on data, not based on even an analysis of the ABC log that Dr. Hudson herself created, that A.G. was spending a significant amount of time outside of her class, a significant amount of time plopped on the floor, a significant amount of time not responding appropriately to directives. When parents come to the IEP meeting, they don't come with as much knowledge as a school district has. The school district employs educators and professionals who understand and have an obligation to both know the law and to know what is required for that specific student that they're talking about. When we look at why she was moved to Roadrunner, a school where she was not able to access music and art, where she spent a significant time in the intervention room. The records show that the parents knew that before they visited the site or after visiting the site? I'm sorry, knew. Records show that the parents knew that it didn't have those additional programs. There's nothing in the record that indicates that, except that the Roadrunner manual was provided to parents and it was an outline of some of the behavior techniques that they use at Roadrunner. There was no indication in those manuals that children are restrained or physically escorted when they're ignoring a directive. But the question was art and music. Art and music. No, there is nothing in the record to show that, Your Honor. However, the website, and I don't know the exact date when the parents looked at the website for the school, indicated that this is a separate school, a separate school, self-contained school for children with severe emotional disability. Does the record show that Roadrunner doesn't actually have art and music or just that she didn't participate in what they had? Roadrunner does not offer electives for anyone. Correct. It is a separate self-contained school for children with severe emotional disturbance. District Court decided that she was not qualified to attend art and music because she hadn't been able to at Vista Valley? Vista Valley? Vista Verde. Verde. That was his view, which is a little bit confounding. But he was clearly troubled also that the parents, as Judge Lamel indicated, were at the meeting regarding the move. The record shows that they had visited the school. And I think to Judge Friedland's point, the school didn't offer those services. So what do we make of that? So on the first issue that you raised with the qualification requirement, the appellee themselves, the school district, was also confused in their principal brief about what he meant in regards to her not being qualified. Right. As being a child in the public school system, she would be qualified to benefit from any program that was available, including art or music. We can't look at her failure to participate because she wasn't denied the access that she needed in order to participate as a means of interpreting that. It's a misnomer, isn't it? Correct. It's a misnomer in this context. Yes, yes. And I'm sorry, your second question was in regards to? We're just trying to look at the record, and we see that the district court judge was very mindful that the parents were at the transfer meeting. I'll call it the IEP team meeting regarding the transfer. They had visited the school, and the school doesn't offer, that roadrunner school didn't offer music and art. That's my understanding anyway. And so what do we make of that? The father did testify that when he came to the IEP team meeting and he had two options, homeschooling or roadrunner, they ultimately agreed to roadrunner even though they were reluctant to do so. He was told, he was informed by school district employees that there were a lot of students like A.G. at roadrunner. There was no discussion about those elective courses. So is your argument then that going to the meeting, you know, the parents were there, but it's not their job to have this expertise, and essentially, I think per their brief and argue that this is, it's not something, a duty the district can delegate to the parents. I think that's your sense, my sense from your briefing is that they weren't qualified to make the assessment they didn't know. Absolutely, Your Honor, absolutely. And they rely on the information provided from the school districts. They rely on the information from Dr. Kirkland, from Dr. Hudson, from the administrators. Okay, so what made it obvious? What made it obvious then? The information that made it obvious was that Dr. Hudson was emailing for help. What the other information in the record that made it obvious was that the IEP in November indicated that she was, November 2009 indicated that she was still struggling with attending these classes, meaning that she was engaging in elopement behaviors and that she wasn't, at that time she still had behaviors that were impacting her learning. Furthermore, Dr. Hudson herself testified that these behaviors were disability related. And I want to speak to that because when the school district acknowledges that there's behaviors associated with a disability, that triggers the need for an assessment. Can I ask about this? Yes. So the assessments that you're saying she should have gotten, I'm struggling with whether those are accommodations themselves or whether they're a way to identify accommodations. Could you respond to that? Sure. Yes. That is a tool to identify the accommodation. And then that would lead to- Is it the accommodation? I mean, so it seems like you're saying she should have had these assessments, but I guess my understanding of the law is more like if there was an accommodation that she should have gotten or a service she should have gotten that was so obvious that there was notice, then they could be liable. But there's a step along the way that isn't an accommodation, and I'm not sure how you get to the next step, and I'm really struggling with that. Yeah. So the process within special education is that that assessment then develops the behavior plan, and that behavior plan allows the child to access their education because it's a plan that focuses on functional equivalent replacement behaviors and looking at what can we be teaching, because that's what education is about. What could we teach this child to access? Was there ever a plan, a behavior assessment and intervention plan, which is one following the other one, at Vista Verde? Not at Vista Verde. At North Ranch in 2007, the student did have a functional behavior assessment, and for almost a complete year, for over a year, the student did not have any behaviors as identified in the behavior detail report. So that is evidence that when she was provided a functional behavior assessment, she was both able to access the curriculum and enjoy the benefits of education. But in order for her to remain in the school. Exactly. And in this school, the IEP called for time in an intervention room. There were certain accommodations that had been made, and they weren't working. It sounds to me that what you're really arguing is that, or part of what you're arguing is that they needed to take a look via a functional assessment and a behavior intervention plan to see whether there was more that they could do that would have allowed her to stay there. Exactly, because the Code of Federal Regulation, Interpreting 504, says to the maximum extent possible, a child needs to be as educated with their typically developing peers, unless by way of supplemental services it has not proven to work with satisfaction. Here, had they provided that assessment, maybe it would have resulted that even by way of assessment and behavior plan, she was still having behaviors and we needed to look at alternative settings. But they didn't go through that step. Could we jump to what happened subsequently here? There was a settlement on the IDEA part of the case with reservations to pursue the 504 and the Title II claims. It seems inconsistent in some way that you would waive your rights or settle your rights on the IDEA, which deals with access to public education, which deals with disabilities, which deals with assessments, and say that, well, we're pursuing these other claims because of the remedies, I think, available there. I'm trying to reconcile to what extent is a settlement a waiver of claims. Correct. This Court in Lemahieu has held that relief under IDEA does not limit our relief under 504. I'm not questioning the relief issue. I'm questioning your waiver. Because all of these three acts are interrelated. Thank you. The waiver and the carve-out language in the settlement was only waiving claims in relation to IDEA FAPE claims. So I'd like to now pass the microphone. He knows that part. You're just getting to his question now. Oh, okay. Would it be possible to add a few more minutes to the clock for the amicus? Come on up. You've allocated your time, so come on up, please. Yes, ma'am. May it please the Court, I am Kristen Proshield with Baker & McKenzie, representing the amicus COPA in this action. And why COPA is here is because of the broader issues that the District Court's order raises, specifically, as already identified by this Court, the issue of the role of the parents versus the role of the school in terms of placement decisions and also evaluation, and also whether or not there was a sufficient evaluation supported by decades of science before this placement decision was made. As Judge LaMalle already raised, the issue of parental consent here is important, but that does not delegate the school's duty under Hellgate or Amanda Jay. We recognize that. The public and the points raised are valid. But my question goes to the effect of the waiver. And all these three acts, to me, are interrelated. And I understand that you have separate revenues and entitlement to relief, but I'm having trouble reconciling the waiver on the one and then reserving entitlement on the others. Yes, Your Honor. So if I could clarify your question. You're asking why the waiver under the IDEA claim, so the settlement there, why we still have a leg to stand on, basically, with 504. And the issue is this. Appellee is relying on the IEP that was prepared over November, December, January, as part of the support of its obligations to provide free, appropriate public education under 504. It's in 34 CFR 104.35B1 that, in fact, an IEP is one way that the appellee can show compliance with 504. At that point, the door is open to look at the sufficiency of the IEP for purposes of 504. I guess it's going to the question of whether or not that's a waiver of, say, reasonable accommodation issues, because that, to me, is the core of this case. Is the reasonable accommodation question whether or not it could be decided on a summary judgment fashion, as he had done, or on the merits? Your Honor, I am running out of time. I'd like to take a few minutes to conclude and answer your question, Judge Limmel. With respect to the quote-unquote waiver, the law is clear. The school does not have ñ cannot waive any of its duty to provide services as non-discriminatory under 504. So ñ Unless that waiver is effective in knowing and if it's sort of like a ñ I don't know. I hate to analyze this to rule 11, but, you know, annoying involuntary kind of situation. To what extent do the parents, you know, participation in that process? The parents' participation in the process is undisputedly incredibly important as part of the 504 team. However, the law is clear, and we have to not just think about AG in this case, but we have to think about the children in the Ninth Circuit that may not have parents as active, as involved as AG. Or that even attend the IEP. Exactly. You cannot ñ first of all, the fact that the parents don't attend the IEP meeting, as Judge Christian just raised, does not delegate that duty or provide any sort of blanket consent for the school district to do exactly what happened here, write one paragraph and change placement of the child without a functional behavioral assessment. Is it clear what accommodation she should have gotten if she'd had the assessment? It is not clear what accommodation she should have gotten had she had a proper assessment that is fact-specific and individualized as the regulations require that an FBA would provide. Do the parents need to show, to follow up on Judge Friedland's question, that there was an accommodation that could have been made that would have allowed her to stay in that school? That is placing an ñ Judge Christian, that is placing an incredibly high burden on ñ Is the answer to the question no? The answer is no. That's an incredibly high burden. Okay. I want to ask about this, though. So it makes sense to me that in a claim for injunctive relief, the parents could say, this is the school's burden to do an assessment. They haven't done it. We don't know what the accommodations are. But in a case for damages, which I think maybe we're only left here with a case for damages, although maybe your co-counsel could explain this, if we're only left here with a claim for damages, I'm having trouble figuring out how a claim for damages can proceed if the plaintiff can't show what accommodations should have been given and what benefit that would have given and how to monetize that. There are a bunch of links in the chain here that I'm really not understanding how it fits into a damages claim. Judge Friedland, I do believe that appellant's counsel would be more appropriate to answer this question, but I will say that with respect to deliberate indifference, the failing to act on the likelihood of discrimination also includes failing to adequately investigate whether autism-related services were a reasonable accommodation. That's straight out of Hamamoto, and we believe that that does apply in this case. Thank you. Thank you. May it please the Court. Erin Walls on behalf of Paradise Valley Unified School District. The district court found that there was no evidence that an FBA was required, that it would have done anything to change things, that it was denied on the basis of AG's disability. But the district court made a mistake, right? The district court relied on an expert for a legal conclusion about whether it was required, and that can't be the right basis, right? I mean, maybe he was right for other reasons, but that reason can't be right, can it? To the extent that the district court simply mirrored Dr. Farrow saying, well, no, it's not a legal requirement, I agree. And isn't that what the district court said? But it also seemed to imply, the district court's opinion seemed to imply that, well, the parents never raised concerns about the failure to have those assessments. Is that correct, to say that the parents had that obligation as opposed to the system? To raise concerns? About having the assessment. It says here that, quote, because of her, the district court found the evidence did not show that an AG was denied an FBA or BIP because of her disability, and that the fact that the parents participated in the IEP team meetings provided an opportunity for them to raise any concerns about Roadrunner's placement. So I think that if a parent has a concern about a placement that is being discussed at an IEP team, they need to raise it. They certainly have. But the council record tells us that the child's father said, I had two choices, homeschooling or Roadrunner's. That's what he understood. And he doesn't do this for a living. No, and he does not. However, a year prior, this same student was expelled from a school, and parents went and found private placements, and the district paid for them. So parents saying, I only had two choices, he actually knows he has other choices. He has used them. I don't know that that's true, because at this point, and this is what's concerning to me, the child went to the school in, I think, August, the beginning of the school year, and the record shows some really extreme, very concerning behaviors starting in about December and then escalating to the point where it looked to me like nobody knew what to do. This is a very concerning situation. And so for a parent to say, essentially, we didn't know what our options were. We were looking to the professionals to help us. That's how I read the record, and I want to give you a chance to respond. I wouldn't be so quick to say that the parents knew they had other options. Well, I think they knew they had other school options. Well, I don't know why you think that. Because they had been to them. But the behaviors had escalated dramatically. But if you're just talking about the idea of an assessment, let's stick to that for a minute. If you just talk about the assessment idea, and even if the parents knew that this is something that might be appropriate and didn't raise it, okay, all of the three acts that we aggregate them doesn't put any obligation on the parents to assess the need for the assessment and give them the assessment. It puts the obligation on the system. The obligation is absolutely on the district and the district members of the IEP. And is that waivable? Can they waive their obligation? Can the parents waive that? I don't think the parents can waive that. So doesn't that go against your argument? No, because the district members of the IEP team went to the meeting with their best ideas. So you believe that's a substitute for the formal behavioral assessment and intervention plan? There is no legal requirement for an FBA. Right, but there is a legal. They can't just throw a dart. They had a really concerning situation. I don't mean to be flip, but they had a very concerning situation. And their argument essentially is there wasn't a basis, there wasn't an adequate investigation to figure out whether Roadrunner was really an appropriate placement to deal with this challenging situation. What about that? What does the district have to do to decide about the next step? Well, the IDEA governs the process. So the IDEA says they have to come to this meeting. They have to look at the information they have. And what if they haven't adequately gathered adequate information? That is the crux of the opposing party's claim. And wouldn't that be rightfully addressed in an IDEA due process? Is that your argument? You're asking questions, counsel. This is up to you. What's your theory? Yeah. Well, if the argument is that the district made a poorly informed decision on where to place her, that was an IEP team decision. It cannot be discriminatory. It can be the basis for an IDEA claim, which has been expressly waived. Is the district's argument, then, that they settled that claim? Oh, absolutely. Absolutely. And to the extent that now we are hearing an evaluation should have been done under 34 CFR 104.35, that was not raised in the opening brief. To what extent should we give some validity to the fact that the district agreed to the reservation of rights to pursue these other back claims? Certainly. They certainly did. So what was the district agreeing to reserve? Well, the district agreed that plaintiffs were reserving their right to their discrimination and ADA claims. They expressly waived free appropriate public education under federal law. It's my opinion that includes 504 and IDEA faith, based on the language of the settlement. Okay. It leaves them with 504 discrimination and ADA for their federal claims, which is the reasonable accommodation claim. All right. Is it your position that the district didn't have notice that they were pursuing claims under the regulations for a 504 FAPE? Did we have notice? We knew they had made a FAPE claim. They refused to articulate the federal statute that they were bringing that under. Or regulations, right? I was trying to figure out if it was clear in the district court that they were relying on any FAPE regulations. In fact, we had to do discovery to ask, what statute are you suing under? And then we had to do a motion to compel. And what was the response? The response was that the claims that they were leaving were 504 and ADA, and the free appropriate public education was all they would say on that. But no regulations were cited in that response? No regulations. Is that response in our record here? The discovery response? Is that in the ER? I'm just wondering if I can look at it. I believe it is. I can check my ER table of contents and tell you that. Because we couldn't discern which claims were falling under which counts, and trying to articulate that was very difficult. But what was missing was the regulation, not the statutory? There were no statutes either. We were not told in any of the complaints this is a 504 claim. Wait, I thought pursuant to the discovery response, you got a 504 FAPE response. You just didn't know which regulation. Am I wrong? No, I got a FAPE response, not a 504 FAPE. I see. All right. Thank you. So whether it's 504 or IDA remains subject to debate. Got it. Okay. Thank you for the clarification. I appreciate that. So an FBA is a creature that the IDEA acknowledges and says is required in this particular circumstance. When there is a manifestation determination review, a student's conduct is found to be the product of the disability, and a disciplinary change of placement is contemplated. All IDEA, none of them at issue here. And this was not a disciplinary change of placement. This was an IEP team, for the right or wrong, trying to determine what to do to help this girl. Where do we put her? What resources do we have? I understand that now we are being told an FBA should be required as an accommodation under 504. Well, as a means of figuring out what accommodation was needed in order to adequately assess what would it take to hopefully keep the child in the school. That's what opposing counsel said. Well, an FBA is designed to find the positive behavior interventions. And it is worth noting that Roadrunner is based on the Boys Town education model, which is a positive behavior intervention system. So an FBA is designed to create these behavior interventions. This entire school is a positive behavior intervention. And it turns out that this student did remarkably well there. But, counsel, that misses the point because their point is this school, the Roadrunner school, didn't have art and music. They would have liked to keep her in the school where she was. So before deciding to move her, they wanted, you heard them, they wanted the behavior assessment and the intervention plan in place to see whether they could keep her there. Certainly. The district and the IEP team didn't find that an FBA was the next right thing to do. For good or bad, that was not what they decided to do. Did they discuss it? Not to my knowledge. I can't find it in the record. All right. No. Doctors Kirkland and Hudson. I'm sorry. Finish your point. No. Doctors Kirkland and Hudson, who were the psychologist and special education teacher most involved, had two positive behavior intervention plans. There was no FBA. They believed they had an understanding of what was going on with this child and that they weren't able to address it at the school. But am I correct that the district judge here relied upon the failure of the parents to raise that concern for the assessments and the fact that the plaintiff's expert, Dr. Ferro, had opined that that was not required? Is that what he relied upon in deciding that, you know, we didn't need this assessment? But I think the district court says more than that even. I think the district judge also said we have no evidence that an FBA, if it's not legally required under the IDA, and it's not, and nobody asked for it . . . But if it's obvious? It obviously wasn't obvious to this school. It was not so prevalently used. Isn't that a subjective . . . I'm sorry. Forgive me. Go ahead. We're just getting to the same thing. You say it wasn't legally obvious. We're at summary judgment. Well, it's not required under the law. Yes, but we've covered that. And the question was, as this child presented, given her particular challenges, the question is whether it's obvious, and this strikes me as something that's not particularly susceptible to a summary judgment ruling. I think that's what Judge Limmel was getting at as well. Much better asked than I would have. Perhaps I go back to if we find, if this court determines that an FBA is required as an accommodation outside of the IDEA, we're turning the IDEA on its head. That is no longer, then, the governing framework for schools and students. It's just that you keep shifting. It's like a shell game. You keep shifting arguments on us. That's the difficulty. I mean, was it waived? That's one argument you're making. Then you're saying it wasn't obvious. We're saying, well, maybe that's a question of fact. That looks like a question of fact. And now you're back to, gee, that's not something that has ever been recognized outside the IDEA. Well, an FBA is only legally required under the IDEA, so I apologize. Yes, but we just went over that. That's what Judge Friedland just went over about the extent to which that was waived in your discovery responses and the extent to which plaintiffs were or were not pinned down about what it is that they intended to preserve. Okay. So, was the district required to perform an FBA? It is certainly our position that they were not, and the not performing an FBA was not an act of discrimination. So, am I understanding, maybe you're trying to make a slightly different point, but I'm not sure. So, one thing you seem to be saying is that these assessments are not required by the IDEA, but even if they are, as a factual matter, sometimes it's all within the IDEA. Are you saying that the ADA and Section 504 can never have their own requirement for these assessments? Is that what you're saying? I think that if they make new requirements in addition to the IDEA requirements, it significantly changes the onus that we're putting on public schools. And so, what you're saying is having that requirement in these other statutes would complicate what schools have to think about, that that's not how schools understand this right now. Absolutely. The schools function on an everyday basis under the IDEA. The 504 is the discrimination piece that envelops it, but even within that, under the IDEA, we must do this. We must have an IEP meeting. It says we have to do this. We have these timelines. But, if we have similarly more technical requirements under 504 and ADA, then we significantly increase the burden on these schools. If we were to view this as a question of whether or not a reasonable accommodation was made, isn't that a fact-intensive inquiry? If a reasonable accommodation was made? No, should have been made. Isn't that a fact-intensive inquiry? If the reasonable accommodation is an FBA, I think that there are sufficient facts to decide that issue, or a lack of facts to decide that on summary judgment. If the question to the district court was some accommodation should have been made, then we needed to have evidence in the record for the district court to see what accommodation are you offering and how would it have fixed things. There were none of those facts. And that obligation to show those other types of accommodations fall on the system, the parents, or both? Well, it would have to be an accommodation that allowed her access to a placement that we don't think she should have been in. We don't think it was her least restrictive environment. So they're circling back on top of each other. The accommodations that we offered her, we believe were sufficient under 504, ADA, and IDEA. The claim now is that there is another one that we should have done. It should have been obvious to us. It was not obvious to this school district. This school district was functioning under what is the least restrictive environment where we can educate this student. These were the decisions they made. I'm trying to figure out if what you're saying, I'm looking at Hamamoto and trying to see if it can be reconciled with what you're saying. I'm wondering if maybe it can, because in Hamamoto there was no IDEA, IEP, right? They just basically ignored those students, but you're saying your case is different because there was an IEP? Like, Hamamoto seems to have allowed all of these claims to go forward at once, but I think you're saying they can't all go forward at once once the IDEA claim, once there was no IDEA claim, and your position is because they've settled the IDEA claim, they can't then bring them back again in the other statute? I think they've limited their facts and the arguments they can make. If you're going to argue about an IEP, I don't think these plaintiffs can do that anymore. IEP is an IDEA creature. But they're not really saying that. They're saying they needed these assessments, but then your response is, but that had to be as part of the IEP process? Absolutely. My time is up. Thank you for your argument. I'm sorry, could I ask her one more question? About the state law claims, do you have any evidence that AG was violent before the escort on March 23rd, that she was already being violent or physically dangerous before the escort began on March 23rd? My recollection is that she was leaving, not that she was physically acting out, but that she was on the move. Thank you. Thank you, Your Honor. We'll put two minutes on the clock. You're substantially over, but we'd like to hear what you have to say. Thank you, Your Honor. Your Honor, I would like to just touch on the restraints that happened, that occurred at Roadrunner School. Thank you for bringing up the issue, the incident that occurred on March 23rd. On both, based on the record, on both issues or incidents that occurred on March 23rd and on February 3rd, AG was actually engaging in behaviors that she had previously engaged in at Vista Verde, and she was not unlawfully restrained. And the reason that's important is because there's only limited circumstances when a And I want to point out that the Office of Special Education, OSEP, issues letters and advisory policies to schools about unlawful restraints. And restraint is considered treatment failure. It's when insufficient investment went into prevention techniques. And the prevention techniques that we are discussing today are assessment, assessment to develop a positive behavior plan, to teach and to teach replacement behaviors, and to teach her how to have a lasting positive outcome in her life, and to reduce those maladaptive behaviors. I do want to touch on, counsel did bring in, as far as the waiver and the settlement agreement. The waiver language in the settlement agreement specifically states that they were waiving IDEA FAPE claims. The court in Lemahieu discussed a distinction between 504 and IDEA. And although they are similar, they are not identical. And that 504 looks at the greater discriminatory implications involved. And when we look to the court in Hamamoto, Hamamoto did look to expert opinion. And in our case, we don't just have expert opinion. We have facts in the record that the school district was struggling to educate, struggling to address those behaviors that AG was exhibiting at Vista Verde. And for the following reasons, we asked this court to reverse the decision of the district court's order on the defendant's, granting the defendant's motion for summary judgment. Is there anywhere in the district court record where you identify regulations, the 504 FAPE regulations that you're bringing your claims under? As far as the record, there are citations to 34 CFR 104.35 and 34, which indicate that to the maximum extent possible, a child needs to be educated with their non-disabled peers and also the requirements to assess in all areas of educational need. Where did you cite those? I would have to look at it. But was it a pleading in the summary judgment argument, or that's what I'm trying to get at, where in the district court? In the reply and response brief brought before this court in the appeal. Right, in the appeal, but not in the district court? The question is in the district court. Your pleadings, I think it's safe to say AG's argument is much more refined here than it was in the district court, to be blunt. And so I think that was the point of Judge Friedland's question. It was a fuzzier claim then. Okay. I can't pinpoint exactly if and where those are in the initial complaint filed within the district court. Okay. Did I interrupt you? Okay. Anything further? Thank you all so much for your arguments today. That's going to conclude our oral arguments for today. We'll stand and recess.
judges: Lemelle, Christen, Friedland